UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-61410-CIV-UNGARO-BENAGES

GLOBAL VAN LINES, INC., an Indiana
corporation,
    Plaintiff,

v.

GLOBAL VAN LINES, INC., a Florida
corporation, DOREEN ABRAMS,
SHARON BENNAMER, and
HAYIM BENNAMER,
    Defendants.
_____/

## FINAL JUDGMENT

THIS CAUSE came before the Court upon Plaintiff Global Van Lines, Inc.'s Motion for Final Judgment against Defendants Global Van Lines, Inc., Sharon Bennamer, and Hayim Bennamer, filed October 23, 2006. (D.E. 79.)  Defendants have not filed a response in opposition to the motion.  The matter is ripe for disposition.

THE COURT has reviewed the notice, the pertinent portions of the record, and is otherwise fully advised in the premises.

On August 22, 2005, Plaintiff Global Van Lines, Inc. filed a five-count complaint against Defendants Global Van Lines, Inc. ("Global"), Doreen Abrams,[1] Shay Horowitz, Sharon Bennamer, and Hayim Bennamer, claiming that Defendants' unauthorized use of Plaintiff's trademarks violated provisions of the Lanham Act and Florida's unfair competition laws, and seeking injunctive relief and damages.  On August 21, 2006, the Clerk of Court entered default

---

[1] Upon Plaintiff's Notice of Voluntary dismissal, the Court dismissed the case as to Defendant Doreen Abrams on January 9, 2007.

1

against Defendants Global, Sharon Bennamer, Shay Horowitz[2] and Hayim Bennamer for failure to appear, answer, or otherwise plead to the complaint. Plaintiff now moves the Court to enter final judgment against Global, Sharon Bennamer and Hayim Bennamer in the amount of $648,000.00 plus reasonable attorneys' fees, costs, and prejudgment interest.

Plaintiff supports its motion for final judgment with the deposition testimony of Global's vice-president, Shay Horowitz, and the affidavits of Global customers Timothy Wagner, Jody Thomas, and Philip O'Doherty.[3] Plaintiff argues that, under the Lanham Act, it is entitled to: (1) Defendants' entire income during the infringing period as compensation for Defendants' prolonged use of Plaintiff's trademarked name; (2) treble damages because of Defendants' willfulness; and (3) attorney fees and costs because Defendants acted in bad faith.

*Plaintiff is Entitled Under the Lanham Act to Defendants' Entire Income During the Infringing Period*

The Lanham Act provides that a successful plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261

---

[2]On August 28, 2006, the Court granted Defendant Shay Horowitz's motion to vacate the Clerk's default as to Defendant Shay Horowitz. Upon Plaintiff's notice of voluntary dismissal with prejudice, the Court dismissed the case with prejudice as to Defendant Shay Horowitz on December 12, 2006.

[3]Plaintiff represents that "through no fault of its own, and despite exhaustive efforts, [it] has been unable to obtain full discovery relating to the infringing parties' income"; that "[e]ven when the defendants were all represented by counsel, discovery went unanswered"; and that "from the date of default until the present, Plaintiff . . . continued in its attempt to obtain discovery, but [Global], Sharon Bennamer, and Hayim Bennamer again refused to appear for depositions." (Motion for Final J. ("MFJ") 2; Ex. A (Certificates of Non-Appearance of Hayim Bennamer, Sharon Bennamer, and Global ).)

F.3d 1188, 1205 (11th Cir. 2001) (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994)).  Section 1117(a) further provides that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case," and that "[s]uch sum in either of the above circumstances shall constitute compensation and not a penalty."  15 U.S.C. § 1117(a); *Burger King Corp. v. Mason*, 855 F.2d 779, 780-81 (11th Cir. 1988) ("The [Lanham] Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party." (citing *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968), *cert. denied*, 391 U.S. 966 (1968)).  It is well-settled in the Eleventh Circuit that "a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under [the Lanham Act]." *Burger King Corp.*, 855 F.2d at 781 (explaining that "[a]n accounting for profits has been determined . . . to further congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future") (citations omitted).  Moreover, the Lanham Act provides that "a defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a); *see Playboy Enters., Inc. v. P.K. Sorren Export Co.*, 546 F. Supp. 987, 997 (S.D. Fla. 1982) (finding that plaintiff "need only show defendants' gross sales of infringing goods," and that the "burden of proof then shifts to defendants to demonstrate their costs").

To establish Defendants' gross income resulting from the infringing conduct, Plaintiff relies on (1) a copy of Defendant Global's Articles of Incorporation, filed on April 5, 2005, and subsequent Articles of Amendments, filed on July 11, 2205, and October 10, 2005, respectively

3

(MFJ, Ex. B), and (2) the deposition testimony of Defendant Global's vice-president, Shay Horowitz, (MFJ, Ex. C) which, Plaintiff represents, is the only evidence made available to it in discovery. (MFJ 5.) The Articles of Incorporation and Amendments reveal that Defendant Global was incorporated under the name Global Van Lines, Inc., in April 2005, and that the name was in use until October 2005, when Defendant changed its name to Universal Van Lines, Inc. (MFJ, Ex. B.) Shay Horowitz testified that in July or August of 2005, Hayim Bennamer, the owner of Global, invited Horowitz to invest money in Global, and that at that time, Hayim Bennamer told Horowitz that the business "was doing very well." (MFJ, Ex. B (Horowitz Dep. Test. p. 31 at lines 19-15; p. 32 at lines 1-8).)

Shay Horowitz testified that in July or August of 2005, when he decided to invest in Global, it was his understanding that Global was conducting more than ten (10) moves per month. (MFJ, Ex. B (Horowitz Dep. Test. p. 41, lines 18-25; p. 43, lines 1-3).) Horowitz also testified that he was not sure if Global was conducting more than fifty (50) moves per month, but he did not deny the possibility. (MFJ, Ex. B (Horowitz Dep. Test. p. 43, lines 4-7).) Horowitz testified that at the time he decided to invest in Global, Hayim and Sharon Bennamer told him that they were charging an average of $2,000.00 per move, and that the profit margins on their moves were forty or fifty percent. (MFJ, Ex. B (Horowitz Dep. Test. p. 43, lines 8-15; p. 44, lines 16-18).)

Horowitz testified that after January 2006, he was never told during any of the regular monthly meetings of Defendant Global's officers that Global–which was now operating under the name Universal Van Lines, Inc.–was making a profit. (MFJ, Ex. B (Horowitz Dep. Test. p. 78, lines 23-25; p. 94, lines 1-8).) Horowitz recalls that he was told by Hayim Bennamer that the

company's lack of profits after January 2006 was due to the fact that winter was the "off season" for the business. (MFJ, Ex. B (Horowitz Dep. Test. p. 94, lines 9-15).) Horowitz testified that in January 2006, the company was breaking even, and that by February 2006, the company began to lose money, and continued to lose money until May 2006, when the company dissolved. (MFJ, Ex. B (Horowitz Dep. Test. p. 106, lines 12-25).) Horowitz testified that in February 2006–when Defendant Global was operating as Universal Van Lines, Inc.–the company's revenue was between $50,000.00 and $120,000.00 per month. (MFJ, Ex. B (Horowitz Dep. Test. p. 98, lines 6-25; p.99, lines 1-25).) Horowitz testified that during 2006, Defendant Global continued to book moves in excess of ten (10) per month, and sometimes in excess of fifty (50) per month–that in the better months in 2006, the company would book about sixty (60) moves per month, and in the slower months in 2006, the company would book around forty (40) moves per month. (MFJ, Ex. B (Horowitz Dep. Test. p. 101, lines 24-25; p. 102, lines 1-12).) Horowitz could not make a direct comparison between the figures from 2005 and the figures from 2006 because he said that he did not have the figures for 2005. (MFJ, Ex. B (Horowitz Dep. Test. p. 102, lines 13-25).)

Based upon this evidence, Plaintiff estimates that in 2005–when Defendants were operating the company under the name Global Van Lines, Inc.–the company was conducting at least forty (40) moves per month. Plaintiff's estimation is based upon the fact that the figure falls within Shay Horowitz's estimate of ten (10) to fifty (50) moves per month during 2005, and that it is at the low end of his estimated range for 2006. Plaintiff calculates that–at forty (40) moves per month, charging $2,000.00 per move, and assuming a 45% profit margin–Defendants' monthly profit derived while using the Global name in 2005 was approximately $36,000.00. The

record reveals that Defendant Global operated under the name Global Van Lines, Inc. for a period of six months, therefore, Plaintiff calculates that Defendants' total illegal profit amounts to the sum of $216,000.00.  (MFJ at 6.)

Defendants have offered no evidence of their deductible costs, and Shay Horowitz's deposition contains no testimony as to the company's deductible costs for 2005.  Horowitz did testify that out of the company's revenue of between $50,000.00 and $120,000.00 a month in 2006, salaries of between $2,000.00 and $3,000.00 a month were paid out to Hayim Bennamer and Sharon Bennamer, respectively.  (MFJ, Ex. B (Horowitz Dep. Test. p. 99, lines 1-25; p. 100, lines 1-25).)  However, even assuming that such testimony satisfies Defendants' burden of proving its deductible costs during the period of infringement in 2005, such costs constitute income Defendants Sharon and Hayim Bennamer derived from their infringing conduct, and therefore these amounts should not be deducted.  *See Burger King Corp.*, 855 F.2d at 783 ("[A]ll monetary awards under Section 1117 are 'subject to the principles of equity, [and] . . . no hard and fast rules dictate the form or quantum of relief.").  Accordingly, the Court finds that Plaintiff is entitled to judgment in the amount of $216,000.00 as compensation for Defendants' use of Plaintiff's trademarked name.

*Plaintiff is Entitled to Treble Damages*

The Lanham Act provides that the Court "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  15 U.S.C. § 1117(a).  As the *Playboy Enterprises* court explained, "the Court may award plaintiff up to three times the amount of profits made by the defendant, as justice shall require.  Such an award is discretionary and may be based on a finding of wilfulness.

It may not be punitive, however, and must be based on an actual showing of harm." 546 F. Supp. at 998 (citations omitted).

Plaintiff asserts that the record reflects Defendants' wilfulness insofar as the facts alleged in Plaintiff's complaint–which must be conceded as a result of the Court's entry of default judgment on the issue of liability–are that Defendant Global intended its services to be targeted, and it in fact did target its services, toward "a substantial segment of the public that has long been familiar with [Plaintiff's] trade name, service Marks, and services," and that Defendant Global's services were "in direct competition with the transportation services provided by [Plaintiff]." (Compl. ¶ 23.)  Plaintiff also alleges in the complaint that Defendant Global's "willful, unauthorized and continued use of [Plaintiff's] trade name and Marks has caused confusion, mistake, and deception of consumers who were led to believe that [Defendant Global's] services were in some way sponsored by, connected to, or affiliated with [Plaintiff] and [Plaintiff's] services within the meaning of [the Lanham Act] 15 U.S.C. § 1114(a)." (Compl. ¶ 27.)  Further, Plaintiff argues that Shay Horowitz's testimony supports a finding of Defendants' wilfulness because in his deposition, Horowitz stated that after being served with the instant lawsuit and learning that Defendant Global's customers had been confused as to the nature of the ownership of the company, Horowitz talked to Hayim Bennamer about the fact that Defendant Global's customers were confused by the Global name, and that Hayim Bennamer was aware of the confusion and of the existence of another company named Global Van Lines, Inc.  (MFJ, Ex. B (Horowitz Dep. Test.  p. 111, lines 14-25; p. 112, lines 1-20).)

The affidavits of Defendant Global customers Timothy Wagner , Jody Thomas, and Philip O'Doherty provide evidence that Defendant Global maintained a website by which it

targeted a segment of the public familiar with Plaintiff's services, Mark, and name, that these consumers were confused by Defendant Global's use of the Global name, and that Defendant Global's services were in direct competition with the services Plaintiff provides. (MFJ, Exs. D, E, F.) Moreover, the affidavits of Defendant Global's customers provide evidence of Plaintiff's actual harm, insofar as these customers–who believed that they were doing business with Plaintiff–were so dissatisfied by the services provided to them by Defendant Global, that each customer contacted Plaintiff's corporate headquarters, intending never to do business with Plaintiff again. (MFJ, Exs. D, E, F.) In view of the fact that Defendants' failure to cooperate in discovery has limited the amount of available evidence upon which Plaintiff can base its allegations, the Court is satisfied that Plaintiff has demonstrated Defendants' wilfulness in infringing upon Plaintiff's trademarked name, as well as its actual harm as a result of Defendants' infringement. Therefore, an award of treble damages is warranted.

*Plaintiff is Entitled to Attorney Fees*

Under the Lanham Act, the court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); *see Montgomery v. Noga*, 168 F.3d 1282, 1304 (11th Cir. 1999).[4] Plaintiff argues that it is a prevailing party because it obtained a

---

[4]In *Montgomery v. Noga*, the court explained that the prevailing party is "the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit." 168 F.3d at 1304 (quoting *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990). The *Montgomery* court recognized the U.S. Supreme Court's observation that "[w]here the [party's] success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that [this definition] has not been satisfied." *Id*. (quoting *Texas State Teacher's Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).

In *Montgomery*, the defendants argued that plaintiff was not entitled to attorney fees under the Lanham Act because the jury had awarded plaintiff only $30 in damages on his Lanham Act claim. *Id*. The *Montgomery* plaintiff argued that he had only been awarded $30 on

temporary restraining order enjoining Defendants from using the Global name, and because it obtained a default in its favor. The Court finds that Plaintiff is a prevailing party for purposes of entitlement to an award of attorney fees under the Lanham Act. Thus, the Court must consider whether this is an exceptional case warranting a fee award.

Plaintiff contends that it is entitled to an award of attorney fees under the "exceptional circumstances" provision of the Lanham Act because Defendants acted in bad faith. The Eleventh Circuit has explained that "while congress has not further defined 'exceptional,' the legislative history of the act suggests that exceptional cases are those where the infringing party acts in a 'malicious,' 'fraudulent,' 'deliberate,' or 'willful' manner." *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994). The standard for finding "exceptional circumstances" in the Eleventh Circuit is a showing of fraud or bad faith. *Lipscher v. LRP Publs., Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001). The record reveals that Defendants acted in bad faith by commencing the use of the Global name without first inquiring into the trademark owner. Defendants knew or should have known that its customers would be confused as to Defendant Global's relationship to Plaintiff Global Van Lines, Inc., which is a nationally recognized name. Defendants' unauthorized use of the Global trade name and marks caused actual confusion, mistake and deception of consumers who were led to believe that Defendant

---

his Lanham Act claim because the jury had been instructed not to award him a double recovery of the same damages on his copyright claim. *Id*. The *Montgomery* court did "not focus solely on this damage award . . . in order to determine whether [plaintiff] was entitled to attorney fees." *Id*.

The court in *Montgomery* found it "important to note that the district court, at [plaintiff's] request, [had] permanently enjoined the defendants . . . under the relevant provisions of both the Lanham and Copyright Acts." *Id*. The *Montgomery* court found that, "[c]onsidering both the damages and injunctive relief that he received on his Lanham Act claim," the district court did not err in awarding the plaintiff attorney fees on his Lanham Act claim. *Id*. at 1304-05.

Global's services were in some way sponsored, connected to, or affiliated with Plaintiff. Moreover, Defendants provided these consumers with inferior services while using the Global name. The Court finds that Plaintiff has sufficiently demonstrated that Defendants have acted in bad faith, warranting an award of attorney fees under 15 U.S.C. § 1117(a). *See American United Life Insurance Co. v. American United Insurance Co.*, 731 F. Supp. 480, 488 (S.D. Fla. 1990) (finding that the "harm plaintiff . . . suffered could easily have been avoided had defendant made even the slightest inquiry," and that "defendant's actions constitute[d] bad faith under 15 U.S.C. § 1117, and accordingly, . . . award[ing] the plaintiff its attorneys' fees"). Accordingly, it is hereby

ORDERED AND ADJUDGED that FINAL JUDGMENT is entered against Defendants Global Van Lines, Inc., Sharon Bennamer, and Hayim Bennamer and in favor of Plaintiff upon Plaintiff's complaint as follows. Plaintiff is awarded the sum of $648,0000.00, plus reasonable attorney fees, costs, and prejudgment interest. The Court retains jurisdiction over attorney's fees and costs issues associated with the above-styled cause, for which Plaintiff may apply by separate motion.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of January, 2007.

*[signature]*
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of Record

10